IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES LUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:15CV941-WKW |
| ) | |
| STATE OF ALABAMA DEPARTMENT ) | |
| OF PUBLIC HEALTH, ) | |
| ) | |
| Defendant. ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

By order entered on January 6, 2016, the District Judge has referred this case to the undersigned for action or recommendation on all pretrial matters. (Doc. # 3). Plaintiff James Lucas, proceeding *pro se*, has filed a motion for leave to proceed *in forma pauperis* in this action. Upon consideration of the motion, it is

ORDERED that the motion (Doc. # 2) is GRANTED.

However, upon review of the complaint, the court concludes that some of plaintiff's claims are barred by the defendant's Eleventh Amendment immunity and, thus, are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[1]

**Eleventh Amendment**

Plaintiff James Lucas sues his employer, the State of Alabama Department of Public

---

[1] The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that ... the action or appeal– (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Health, alleging violations of his federal statutory rights. He asserts claims of racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, disability discrimination and retaliation in violation of the Americans with Disabilities Act, and unlawful denial of medical leave and retaliation under the Family and Medical Leave Act.[2] The Eleventh Amendment bars a federal court from entertaining a suit brought by a private party against a state – or one of its agencies or departments[3] – absent the unequivocally-expressed consent of the state to being sued in federal court. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-101 (1984) (citations

---

[2] Plaintiff does not designate any of the counts of his complaint as Title VII claims expressly. (See Complaint, pp. 11-22). However, he refers to Title VII in his jurisdictional statement (id., ¶ 1), describes the defendant as "a state agency ... [that] is subject to suit under Title VII," (id., ¶ 3), includes factual allegations pertaining to racial discrimination and retaliation for complaining of such discrimination (see id., ¶¶ 14-24), and refers to Title VII within Count One (id., ¶ 30). Consonant with its obligation to construe the *pro se* plaintiff's complaint liberally, the court construes Counts One and Two to assert claims of racial discrimination and retaliation in violation of Title VII.

[3] Plaintiff alleges that the "[d]efendant, State of Alabama Department of Public Health ('ADPH') is a state agency under the laws of the State of Alabama[.]" (Complaint, ¶ 3). The court agrees, and concludes that the ADPH is an arm of the state entitled to Eleventh Amendment immunity. See Ala. Code, § 22-1-1 (defining "State Health Department" to mean the "State Board of Health or the State Committee of Public Health, when acting for the Board of Health"); id., § 22-1-3 (prohibiting public health work "except under the supervision and control of the State Board of Health"); id., § 22-2-12 ("Except as otherwise provided by law, salaries of all employees and the costs of all supplies and other expenses necessary to make operative the provisions of this Code and other statutes administered and enforced by the State Health Department shall be paid by the State Health Department out of the general appropriation made by the Legislature for public health work."); Davenport v. Neely, 7 F.Supp.2d 1219, 1230 (M.D. Ala. 1998) ("By statute, the Alabama State Department of Public Health ... [is an] arm[] of the state.") (citing Ala. Code, §§ 22-1-1, *et seq*.); cf. Ross v. Jefferson County Department of Health, 701 F.3d 655, 659-61 (11th Cir. 2012) (applying the four factors set forth in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003)(*en banc*), and concluding that the county board of health, which is supervised and controlled by the state board of health, acted as an arm of the state with regard to the personnel decision at issue for purposes of Eleventh Amendment immunity, even in view of its county funding).

omitted); see id. at 100 ("It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.")(citations omitted). Alabama has not consented to suit in federal court. See Ala. Const., Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity.").

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)(citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst, 465 U.S. at 100. However, "[C]ongress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" Garrett, 531 U.S. at 363.

### FMLA and ADA Claims

The claims that plaintiff asserts in Counts Three through Five are barred by the defendant's Eleventh Amendment immunity. While the FMLA and the ADA both express Congress's intention to abrogate the states' immunity, the Supreme Court has found the purported abrogation to exceed Congress's constitutional authority as to employment discrimination claims under Title I of the ADA and, also, as to the FMLA's self-care provision. Garrett, 531 U.S. at 363-64, 374 (ADA Title I claims); Coleman v. Court of Appeals of Maryland, 132 S. Ct. 1327, 1333, 1338 (2012) (FMLA self-care provision); see

also Garrett v. Univ. of Ala. Bd. of Trustees, 193 F.3d 1214, 1219 (11th Cir. 1999) (FMLA self-care provision), *reversed on other grounds*, Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001).

Plaintiff's FMLA causes of action relate to plaintiff's attempt to exercise his substantive rights under the Act's "self-care" provision, 29 U.S.C. § 2612(a)(1)(D), which grants an eligible employee the right to take leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." See 29 U.S.C. § 2612(a)(1) (five subsections describing circumstances giving rise to an entitlement to leave); id., § 2615 ("Prohibited acts"); Hurlburt v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) ("We have recognized that § 2615(a) creates two types of claims: 'interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'") (quoting Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)); Strickland, 239 F.3d at 1206 n. 9 ("While the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act."). Plaintiff's claims of interference and retaliation under the FMLA rest on the defendant's refusal to grant him medical leave that he sought due to his own post traumatic stress disorder, and its retaliation against him for requesting such

leave and for using "leave that should have been protected under the FMLA as a negative factor in his employment." (Complaint, Count V and ¶¶ 25, 26). Because these claims arise under the FMLA's "self-care" provision, they are barred by the defendant's Eleventh Amendment immunity. See Coleman, 132 S. Ct. at 1338.[4]

Plaintiff does not state expressly whether he brings his disability discrimination claims under Title I or Title II of the ADA. Title I of the ADA prohibits disability determination in the employment context. See 42 U.S.C. §§ 12111-12117. Title II of the Act prohibits disability discrimination in the context of public services. See 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). As noted previously, Congress did not abrogate the states' Eleventh Amendment immunity successfully as to Title I employment discrimination claims. Garrett, 531 U.S. at 374.[5] However, because an employment discrimination claim against a public entity employer may also be brought under

---

[4] Coleman was decided by a plurality of the Court. However, in his concurring opinion, Justice Scalia expressed his view that Congress's power under § 5 should be limited "to the regulation of conduct that *itself* violates the Fourteenth Amendment." Coleman, 132 S.Ct. at 1338 (Scalia, J., concurring). He concluded that "[f]ailing to grant state employees leave for the purpose of self-care – or any other purpose, for that matter – does not come close."). Id. at 1338-39.

[5] In his complaint, plaintiff cites both the ADA and the Americans with Disabilities Act Amendments Act ("ADAAA"). (Complaint, ¶¶ 1, 3 and Counts Three and Four). While the ADAAA post-dates Garrett, the ADAAA does not "alter Garrett's conclusion that the remedies imposed by the ADA are not 'congruent and proportional' to the targeted violations." Parten v. Alabama Department of Tourism, 100 F.Supp.3d 1259, 1272 (M.D. Ala. 2015) (citations omitted).

Title II in the Eleventh Circuit (see Bledsoe v. Palm Beach County Soil and Water Conservation District, 133 F.3d 816 (11th Cir. 1998)),[6] the court must determine whether Congress's express abrogation in the ADA of the states' immunity is valid as to employment discrimination claims arising under Title II.[7]

In Leverette v. State of Alabama Revenue Dept., 453 F.Supp.2d 1340 (M.D. Ala.

---

[6] Of the federal appellate courts that have decided the issue, the Eleventh Circuit stands alone in holding that Title II creates a cause of action for employment discrimination against public entity employers. See Taylor v. City of Shreveport, 798 F.3d 276, 282 (5th Cir. 2015) ("Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination."); Reyazuddin v. Montgomery County, Maryland, 789 F.3d 407, 421 (4th Cir. 2015) ("Based on the text and structure of Title II and the ADA, we agree with the majority of circuits to have considered the question that Title II unambiguously does not provide a vehicle public employment discrimination claims. The Eleventh Circuit in Bledsoe reached the opposite view after a cursory recitation of part of Title II's text, no analysis of the ADA's structure, and heavy reliance on legislative history and the Attorney General's regulations. However, our conclusion that Title II is unambiguous means that we do not reach legislative history or regulations.") (internal citation to Bledsoe omitted); Brumfield v. City of Chicago, 735 F.3d 619, 621 (7th Cir. 2013) ("[T]itle II of the ADA does not cover disability discrimination in public employment; this kind of claim must be brought under Title I."); Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 171, 171 n. 12 (2nd Cir. 2013) (concluding that "the statute unambiguously limits employment discrimination claims to Title I" and that "[a] public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees"; declining to decide the question of whether a Title II claim may be brought against a public employer with fewer than fifteen employees); Elwell v. Oklahoma, ex rel. Board of Regents of the University of Oklahoma, 693 F.3d 1303, 1313 (10th Cir. 2012) (concluding, by resort to "traditional tools of statutory construction," that "Congress has spoken and spoken clearly to the question of employment discrimination claims and placed them exclusively in Title I"); Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169 (9th Cir. 1999) ("[W]hen viewed as a whole, the text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment.").

[7] In Garrett, the plaintiff state employees had sued for employment discrimination under both Title I and Title II. The Supreme Court decided the Eleventh Amendment abrogation issue only as to the Title I claims. Garrett, 531 U.S. at 360 n. 1. Observing that no party had briefed the statutory question of "whether Title II of the ADA, dealing with the 'services, programs, or activities of a public entity,' 42 U.S.C. § 12132, is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject[,]" the Court declined to reach the constitutional issue of whether Title II "is appropriate legislation under § 5 of the Fourteenth Amendment[.]" Id.

2006) (Thompson, J.), the court concluded that, because Congress did not abrogate sovereign immunity validly as to claims of employment discrimination against the disabled under Title I, "Congress did not do so with Title II either." 453 F.Supp.2d at 1345. The court noted the Garrett Court's conclusion that the ADA's legislative history did not demonstrate a pattern of disability discrimination in state employment that would trigger Congress's enforcement power under § 5 of the Fourteenth Amendment, and reasoned that "it would be illogical to find that history of state discrimination against the disabled in employment is insufficient to permit Congress to enact Title I, but that that same history is somehow sufficient to allow Congress to fashion Title II." Id. The court held, accordingly, that the state employer retained its Eleventh Amendment immunity as to claims of employment discrimination under Title II.[8] This court is also persuaded that, if Congress exceeded its § 5 enforcement powers by its purported abrogation of sovereign immunity as to claims of employment discrimination against state employers under Title I, the same is true when those claims are brought under Title II. See Leverette, 453 F.Supp.2d at 1345; Clifton v. Georgia Merit System, 478 F.Supp.2d 1356, 1368 (N.D. Ga. 2007) (also reasoning that the Garrett Court's conclusion that "'[t]he legislative record of the ADA ... simply fails to show that Congress did in fact

---

[8] The Leverette decision post-dates both United States v. Georgia, 546 U.S. 151 (2006) and Tennessee v. Lane, 541 U.S. 509 (2004), in which the Supreme Court found Congress's abrogation of sovereign immunity to be valid as to certain claims arising under Title II in non-employment contexts. The Leverette court discussed both Georgia and Lane in reaching its holding which, it explained, "should not be understood in any way as reaching[] Title II's ability to abrogate the Eleventh Amendment with respect to any issue outside state-employment discrimination." Leverette, 453 F.Supp.2d at 1344-45.

7

identify a pattern of irrational state discrimination in employment against the disabled' is equally applicable to employment discrimination claims under Title I and Title II of the ADA" and holding that "Congress did not validly abrogate sovereign immunity with regard to state employment discrimination actions under Title II").[9]

The ADA's anti-retaliation provision falls within Title V of the ADA. See 42 U.S.C. § 12203. To the extent that plaintiff has alleged that he opposed discrimination made unlawful by the ADA, it is clear that the underlying discriminatory conduct related to the terms and conditions of his own state employment, as did the alleged retaliatory conduct. See Complaint, ¶¶ 25-26 and Count Four).  The court concludes that, as to Title V retaliation claims arising under these particular circumstances, Congress has not abrogated the states' sovereign immunity validly.  Marx v. Georgia Dept. of Corrections, 2013 WL 5347395 (M.D. Ga. Sept. 23, 2013); Marsh v. Georgia Dept. of Behavioral and Health Developmental Disabilities, 2011 WL 806423, * 4 n. 11 (S.D. Ga. Feb. 14, 2011) ("Marsh's claims are employment-discrimination based, at a minimum sounding in the Title I context, so the Eleventh Amendment immunity analysis applied to it is fairly extended to her ADA Title V (retaliation) claim.") (citing McCollum v. Owensboro Community & Technical College,

---

[9] The Clifton court also considered both Lane and Georgia and found them to be distinguishable. The court observed that "[t]he Court's holding in Lane that Congress had properly abrogated the states' Eleventh Amendment immunity for certain types of Title II claims is inapplicable here, as the holding was narrowly crafted and limited to cases implicating the accessibility of judicial services." Clifton, 478 F.Supp.2d at 1367.  It found the Georgia holding to be inapplicable as well, concluding that "[n]o ... independent violation of a stated constitutional protection is clearly implicated in the matter at hand." Id. at n. 9.  In the present case, likewise, plaintiff's allegations of disability discrimination and retaliation do not have constitutional implications.

2010 WL 5393852, *3 (W.D. Ky. Dec. 22, 2010)), *recommendation adopted*, 2011 WL 806658 (S.D. Ga. Mar. 2, 2011); McCollum, 2010 WL 5393852 at *3 ("The majority of the courts when confronted with this question considered the underlying discrimination a plaintiff opposed in determining whether a plaintiff's retaliation claim under § 12203 of the ADA is barred by the Eleventh Amendment."); see also Demshki v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001) ("We recognize that Garrett arose in the context of Title I, but we nevertheless conclude that the Court's holding necessarily applies to [retaliation] claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I.  Title V prohibits discrimination against an employee who opposes 'an act or practice made unlawful' by the substantive provisions of the ADA.  42 U.S.C. § 12203.  There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled.  Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.").

Accordingly, Counts Three, Four and Five are due to be dismissed entirely, as they are barred by the defendant's Eleventh Amendment immunity.[10]

## Section 1981 Claims

In Counts One and Two, plaintiff asserts claims of racial discrimination and retaliation

---

[10] The State of Alabama Department of Public Health is the sole defendant in this case. The exception to Eleventh Amendment immunity established by Ex parte Young, 209 U.S. 123 (1908) does not apply to this defendant.

9

pursuant to 42 U.S.C. § 1981.  "[Section] 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." Bryant v. Jones, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009) (citing Butts v. County of Volusia, 222 F.3d 891, 894-95 (11th Cir. 2000)); see Williams v. Alabama Dept. of Corrections, 2014 WL 2968457 (M.D. Ala. Jul. 2, 2014) (plaintiff's § 1981 claims merged with his § 1983 claim because, "[b]ased on the holding in Butts, § 1981 does not provide a cause of action against [state actor] Defendants"); Taylor v. Alabama, 95 F.Supp.2d 1297, 1309 (M.D. Ala. 2000) ("[B]ecause Plaintiff's §§ 1981 and 1983 claims are one and the same, the court will treat them as one claim and henceforth will refer only to § 1983 in analyzing said claims.").  Plaintiff does not invoke § 1983 in his complaint.  However, in view of plaintiff's status as a *pro se* litigant, the court analyzes plaintiff's § 1981 claim as one levied against the State of Alabama Department of Public Health pursuant to 42 U.S.C. § 1983.

Plaintiff's § 1983 claims of racial discrimination and retaliation are also barred by the defendant's Eleventh Amendment immunity.  "Congress has not abrogated eleventh amendment immunity in section 1983 cases[,]" and "[t]he state of Alabama has not waived its immunity." Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (footnote and citations omitted); Selensky v. Alabama, 619 F. App'x. 846, 849 (11th Cir. 2015) (affirming the district court's § 1915 dismissal of claims on Eleventh Amendment grounds; observing that "neither waiver nor abrogation applie[d]" to the § 1983 claims before the

court). Thus, Counts One and Two of the complaint – to the extent that they claim violations of § 1981 – are also due to be dismissed.[11]

## Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge, pursuant to 28 U.S.C. § 1915(e)(2)(B), that: (1) plaintiff's ADA discrimination and retaliation claims (Counts Three and Four) and his FMLA interference and retaliation claims (Count Five) be DISMISSED as barred by the defendant's Eleventh Amendment immunity; (2) Counts One and Two, to the extent they assert § 1983 claims alleging racial discrimination and retaliation, also be DISMISSED due to the defendant's Eleventh Amendment immunity; and (3) this action be referred back to the undersigned Magistrate Judge for further proceedings on plaintiff's Title VII claims.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the plaintiff. The plaintiff may file any objections to this Recommendation on or before January 21, 2016. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de*

---

[11] Congress has abrogated the states' sovereign immunity with respect to Title VII claims. Fitzpatrick v. Bitzer, 427 U.S. 445 (1976). Thus, the Eleventh Amendment presents no impediment to Counts One and Two, to the extent that they claim relief under Title VII.

*novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; see Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

It is further ORDERED that:

(1) the Clerk is DIRECTED to serve the complaint and summons, and a copy of this Recommendation, on the defendant; and

(2) that the defendant is hereby relieved of its obligation to respond to the complaint absent a further order of the court directing it to do so, but may object to this recommendation or respond to any objections that the plaintiff may file, as permitted by 28 U.S.C. § 636(b) and Rule 72 of the Federal Rules of Civil Procedure.

DONE, this 7th day of January, 2016.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE